UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KIARA BOYD, | |
| Plaintiff, | |
| v. | Case No. 3:22-CV-908-CCB |
| FLEXAUST INC., | |
| Defendant. | |

## ORDER

Kiara Boyd sued her former employer, Flexaust Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981[1], and Title VII as amended by the Pregnancy Discrimination Act. Ms. Boyd is an African American woman and alleges that she faced disparate treatment and a hostile work environment because of her race, sex, and pregnancy. [DE 17.] Flexaust seeks summary judgment on Ms. Boyd's claims. [DE 23.]

### Relevant Background

The facts below are not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis.

Flexaust is a leading hose and ducting manufacturer that serves a range of industrial and commercial customers. [DE 24, ¶ 1.] Flexaust has policies prohibiting all forms of discrimination and harassment. [DE 24-1, pg. 79-82, 93-95.] These policies are described in the company's employee handbook. *Id.* The handbook also describes the procedures for reporting incidents of discrimination and harassment. *Id.*

---

[1] The elements of discrimination claims under Title VII and § 1981 are the same. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 & n.1 (7th Cir. 2012); *Hrobowski v. Worthington Steel Co. & Worthington Indus., Inc.*, 358 F.3d 473, 476 (7th Cir. 2004).

Ms. Boyd was assigned to work at Flexaust's plant in Warsaw, Indiana while working for a temporary staffing agency. [DE E 24. ¶¶ 15-17.] On April 26, 2021, she was hired as a full-time industrial cleaner. *Id.* ¶¶ 19, 24. She reported to Todd Sautter, who is the Human Resources Manager at Flexaust. *Id.* ¶ 11. Ms. Boyd's first year with the company went well. *Id.* ¶¶ 15-30. Because she performed well as an industrial cleaner, Ms. Boyd was told that she would receive an opportunity to try a position in production when she returned from maternity leave. [DE 24-1, pg. 5, ¶ 17.]

Ms. Boyd began maternity leave on April 18, 2022, and returned in late May or early June 2022. [DE 24-1, pg. 36; DE 31-1, pg. 25.] By the time she returned to work, a new employee named Briley Spurlock began working as an HR Specialist at Flexaust. [DE 31-1, pg. 19, ¶ 3.] Soon after Ms. Boyd returned to work, she renewed a request to be promoted to a position in production, which was granted. [DE 24, ¶¶ 31-32.] According to the employee handbook, employees are typically given a 90-day introductory period to adjust to their new position unless performance issues arise during that window. [DE 31-1, pg. 20, ¶ 4; DE 24-1, pg. 99-100.] After a few days of training, the production supervisor decided that Ms. Boyd could not perform in the new position. [DE 24-1, pg. 6, ¶ 21.] When Mr. Sautter learned of the production supervisor's determination, he offered Ms. Boyd the chance to return to her industrial cleaning position. *Id.*

After returning to work as an industrial cleaner Mr. Sautter learned of issues with Ms. Boyd's performance. [DE 24-1, pg. 6, ¶ 23.] According to Mr. Sautter, Ms. Boyd did not always clean the facility as expected and was difficult to locate at times. [DE 24-1, pg. 6, ¶¶ 24-25.] Mr. Sautter also began receiving complaints from employees about cleanliness. [DE 24-1, pg. 6, ¶ 26.] Mr. Sautter investigated those complaints and concluded that Ms. Boyd was no longer meeting the company's expectations. [DE 24-1, pg. 7, ¶ 27.] Mr. Sautter met with Ms. Boyd and gave her a cleaning schedule

which described where and when she should clean. *Id.* ¶ 29. Even so, this did not lead to an improvement in her performance. *Id.* ¶ 30.

Ms. Boyd was terminated from Flexaust on September 13, 2022. [DE 24-1, pg. 5, ¶ 12.] Ms. Boyd filed a charge of discrimination with the Indiana Civil Rights Commission and the U.S. Equal Employment Opportunity Commission ("EEOC") on September 29, 2022. [DE 24-1, pg. 70.] The EEOC issued a right-to-sue letter on October 12, 2022. [DE 17-2.] Thereafter, Ms. Boyd filed the current lawsuit.

## Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the

existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), overruled on other grounds by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## Analysis

### I. Ms. Boyd's Charge

Flexaust argues that Ms. Boyd's claims fail because the charge of discrimination that she filed with the Indiana Civil Rights Commission and the EEOC did not address harassment. [DE 24, pg. 8-10.] A Title VII plaintiff may not "bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)(citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)). However, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* To determine whether an EEOC charge embraces the claims in the complaint, courts consider whether the claims in the complaint are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.*

Flexaust contends that the charge does not allege harassment. But a closer look at the language in the charge undermines Flexaust's argument:

> …I've experienced harassment, disparate treatment, and other forms of subtle discrimination. I also can't help but notice as I stated above. Once I returned back from maternity leave all these issues occurred. Which made me feel as if I was experiencing maternal-related discrimination. I believe I have been discriminated against based on my race, color, and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

4

[DE 24-1, pg. 70.] The language explicitly states that she believes she faced harassment upon her return from maternity leave. Still, Flexaust likens this case to *Sitar v. Ind. DOT*, 344 F.3d 720 (7th Cir. 2003). In *Sitar* the Plaintiff's EEOC charge specified that the plaintiff believed she had been retaliated against because of an earlier complaint of sex discrimination. *Id.* at 725. However, the charge did not mention Sitar's sex discrimination or sexual harassment claims. *Id.* The Seventh Circuit held that her sex discrimination and sexual harassment claims were procedurally barred because they involved a "separate set of incidents, conduct, and people" compared to her retaliation claim. *Id.* at 726-727. This case differs from *Sitar* for two reasons. First, Ms. Boyd's charge explicitly states she "experienced harassment," unlike the plaintiff in *Sitar*, who did not include in her charge the theory of liability underlying her complaint. Second, the charge here encompasses the same set of incidents that are described in the complaint. Ms. Boyd's charge indicates that she believed she faced harassment and discrimination based on her race, sex, and pregnancy status, upon returning from leave. Likewise, the allegations in the complaint center on the discrimination and hostile work environment that Ms. Boyd alleges she faced upon her return from leave. Since the presence of harassment is an element of a hostile work environment claim, the language in the charge is broad enough to include Ms. Boyd's hostile work environment claim. *See Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1115–16 (7th Cir. 2022). Thus, all of Ms. Boyd's claims described in the complaint are either explicitly described in the EEOC charge or are reasonably related to what is described in the charge.

## II.     Ms. Boyd's Hostile Work Environment Claim

Ms. Boyd asserts that she faced a hostile work environment when she returned from maternity leave. [DE 32, pg. 12-14.] A work environment is hostile when it is "permeated with discriminatory ridicule, intimidation, and insult." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quotations omitted). To prove a hostile work environment an employee must show

5

"(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1115–16 (7th Cir. 2022). For conduct to be actionable, the harassment "must be sufficiently severe or pervasive to alter the conditions of [the] victim's employment and create [an] abusive working environment." *Id.* at 67. Flexaust argues that Ms. Boyd cannot present evidence that she faced severe or pervasive conduct. [DE 24, pg. 10.] The Court agrees.

Flexaust has policies prohibiting all forms of discrimination and harassment. These policies are described in the company's employee handbook. [DE 24-1, pg. 79-82, 93-95.] The handbook also describes the procedures employees are expected to follow if they want to report discrimination or harassment. *Id.* Ms. Boyd acknowledges that she received a copy of the handbook explaining the reporting procedures. [DE 24-1, pg. 12.] Ms. Boyd was aware of these policies yet admitted that she never reported any issues. [DE 24-1, pg. 65-66.] Further, Ms. Boyd testified at her deposition that she went to Mr. Sautter's boss because she felt like Mr. Sautter was adding additional duties to her role which amounted to harassment. [DE 24-1, pg. 38.] However, when asked to elaborate on what she meant when she used the word "harassment," her response did not indicate any connection to her race, sex, or any other protected characteristic.

Harassing conduct will only amount to a hostile work environment if it is "severe or pervasive from both a subjective and an objective point of view." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "To be severe or pervasive enough to create a hostile work environment, conduct must be extreme." *Howard*, 989 F.3d at 600 (internal quotations and citations omitted). Courts are instructed to consider the "totality of the circumstances" when determining whether conduct is severe or pervasive which "includes (1) the frequency of the discriminatory conduct; (2) how offensive a

6

reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Id.* citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013)

Ms. Boyd appears to base her hostile work environment claim on several factors. [DE 32, pg. 13-14.] First, she points to Ms. Spurlock's (HR Specialist) alleged tendency to follow her around the workplace after Ms. Boyd returned from leave. *Id.* Second, she explains that her work responsibilities shifted so often that she never knew what was expected of her. *Id.* Third, she alleges that her supervisors blamed her for maintenance issues beyond her control. *Id.* Fourth, she emphasizes that she was demoted to her previous role after working in production for only three or four days. [DE 31-1, pg. 20. All these experiences may have been frustrating, but Ms. Boyd has not shown that there is a genuine issue of material fact about the severity or pervasiveness of the alleged conduct. To begin with, only one of these reasons is supported by a citation to evidence, and to defeat a motion for summary judgment, the non-moving party cannot rest on the allegations but must present sufficient evidence to support their case. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Even if she could back up her allegations with evidence, her hostile work environment claim would not survive summary judgment. Ms. Boyd alleged that Ms. Spurlock regularly followed her at work, but there is no indication that this occurred so often or in a physically threatening or humiliating way, that it could be considered objectively offensive conduct. Although her responsibilities may have changed, there is no sign that a jury would find this objectively offensive either. Furthermore, even if she received unwarranted blame for maintenance issues, this is not a sign that her work environment was "permeated with discriminatory ridicule, intimidation, and insult." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quotations omitted). Finally, her demotion to an industrial cleaning position does not support a

hostile work environment claim because it was a discrete act rather than evidence of a pattern of conduct that permeated the work environment.  Ms. Boyd failed to show that there is a genuine dispute of material fact as to her hostile work environment claim.

### III.    Ms. Boyd's Disparate Treatment Claims

Ms. Boyd alleges that she faced disparate treatment when she returned from maternity leave. [DE 32, pg. 14.]  Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination Act amended Title VII to prohibit employment discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).  Ms. Boyd has not offered direct evidence of an unlawful motive for her demotion or termination, so the Court will analyze her disparate treatment claims under the framework outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To make a prima facie case under the *McDonnell Douglass* framework, Ms. Boyd must prove that 1) she belongs to a protected group; 2) she met her employer's legitimate expectations; 3) she faced an adverse employment action; 4) and that a similarly situated employee received better treatment. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021).  If established, the prima facie case creates a rebuttable presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).  The burden then shifts to the employer to describe a legitimate reason for its allegedly discriminatory action. *Id.*  If the employer meets this burden of production, the presumption of discrimination goes away. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).  Then to prevail, it is up to the employee to show that the nondiscriminatory explanation for the

adverse action was pretextual. *Id.* An employee can show pretext by establishing that "(1) Defendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) ... the reason stated was insufficient to warrant the [adverse job action]." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996) (quoting *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir.1994.)) The parties do not dispute whether Ms. Boyd belongs to a protected class, or that she faced an adverse employment action when she was demoted and fired. [DE 24, pg. 12.] Therefore, to determine whether Ms. Boyd can establish a prima facie case, this Court need only consider whether Ms. Boyd designated evidence that she met Flexaust's legitimate expectations and whether any similarly situated employees were treated better.

   a. **Ms. Boyd Failed to Meet Her Employer's Legitimate Performance Expectations.**

To support her argument that she met Flexaust's expectations, Ms. Boyd designates evidence that she received positive performance reviews in July 2021 and March 2022, and notes she was granted a promotion when she returned from maternity leave. [DE 32, pg. 15; DE 31-1, pg. 27-30.] However, her performance before returning from leave is not directly pertinent to this inquiry. To establish a prima facie case, she must show that she met expectations at the time her employer made the decision to demote her and then fire her. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (Stating that job performance is measured "through the eyes of her supervisors" at the time of the adverse employment action.); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'" (citations omitted)). Ms. Boyd was demoted in June 2022 and fired in September 2022 but Ms. Boyd puts forth no evidence that she was meeting Flexaust's expectations at these times. Flexaust on the other

9

hand, submitted evidence that Ms. Boyd was not meeting Flexaust's legitimate expectations when she was demoted and fired. [DE 24-1, pg. 4-8.]

When Ms. Boyd returned from leave, she had a chance to work in production, as she requested. [DE 24, ¶¶ 31-32.] Mr. Sautter avers in his declaration that Ms. Boyd was removed from this position because her supervisor in production concluded that she was unable to perform the duties required of her. [DE 24-1, pg. 6, ¶ 21.] As previously explained, Ms. Boyd provides zero evidence that she was meeting the expectations of her production position. Instead, Ms. Boyd seeks to cast doubt on Flexaust's explanation for the demotion by noting that employees are generally given a 90-day introductory period to get settled in their new position. [DE 32, pg. 2.] While employees are generally provided this introductory period, the employee handbook makes clear that people may be removed from their position before the 90-day period concludes if performance issues arise. [DE 24-1, pg. 99-100.] The handbook states that "[if] Management determines that you are not satisfying performance expectations *during*, or at the end of, the initial 90 days, your employment will be terminated at that time unless Management concludes that a specified extension of the introductory period is appropriate." *Id.* (emphasis added). Thus, the fact that she was demoted during the 90-day introductory period does not demonstrate that Flexaust's stated reason for her demotion was pretextual.

Upon returning to her role as an industrial cleaner, Flexaust states that issues emerged which led to her termination. Flexaust contends that Mr. Sautter ultimately fired Ms. Boyd for three reasons. [DE 24, pg. 12; DE 24 -1, pg. 6-7, ¶¶ 23-34.] First, Mr. Sautter's declaration provides that Ms. Boyd "was not always cleaning the areas of the facility as expected and it was difficult to locate her at times." [DE 24-1, pg. 6, ¶¶ 24-25.] As an example, Mr. Sautter highlights a time where Ms. Boyd was disciplined for taking an extended lunch break even though no such break was scheduled. *Id.* Ms. Boyd concedes that she was written up for taking too long for lunch but contends that her

Caucasian co-workers were let off the hook for the same infraction. [DE 31-1, pg. 21, ¶ 11.] Importantly, Ms. Boyd failed to designate any evidence that the unidentified "Caucasian co-workers" were similarly situated, which is a necessary element to establish a prima facie case. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021)).  Second, Mr. Sautter's declaration shows that he "began to receive employee complaints regarding cleanliness issues." [DE 24-1, pg. 6, ¶ 26.] This remains largely undisputed by Ms. Boyd. In her brief, Ms. Boyd notes that she did not "admit" that Flexaust began receiving complaints about her performance, but testified that employees complained about the smell of the cleaning products and about the messes left by her co-workers. [DE 32, pg. 4.]  While Ms. Boyd correctly points out that her testimony is not an admission that Flexaust received complaints about her performance, this does not cast doubt on the evidence that Mr. Sautter did receive such complaints. Even if Ms. Boyd was unaware of or disagreed with complaints about her performance, the evidence shows that Mr. Sautter began receiving complaints that implicated her poor performance as an industrial cleaner. [DE 24-1, pg. 6, ¶ 26.]

Third, Mr. Sautter's declaration describes how he followed-up on the complaints he received from employees and confirmed that Ms. Boyd "was not working up to the standards that she previously worked." [DE 24-1, pg. 7, ¶¶ 27-28.] For example, he notes that he observed Ms. Boyd either mopping with water (and no cleaning agent), or with dirty water. *Id.* Although Ms. Boyd disputes that she used only water while mopping, she does not contest that Flexaust raised issues with the manner of her cleaning duties and asked her to do things in a different way.  [DE 31-1, pg. 20-21, ¶9; DE 24-1, pg. 7, ¶ 28; DE 24-1, pg. 33-34; DE 31-1, pg. 11-12.] Mr. Sautter met with Ms. Boyd and he provided her with a schedule that described where she should clean and at what time. [DE 24-1, pg. 7*,* ¶ 29.] However, these efforts did not lead to improved performance. *Id.* ¶ 30.

The final basis for her termination was that Ms. Boyd damaged company property by using the wrong cleaning products.[DE 24, pg. 12.] In his declaration, Mr. Sautter stated that "the

11

cleanliness issues turned into damage to Defendant's property. Specifically, Plaintiff was utilizing the wrong cleaning solution and the cleaning solution damaged the stainless steel in the bathrooms and left a yellow tint on mirrors." [DE 24-1, pg. 7, ¶ 31.] The proper inquiry into whether she was meeting expectations requires the Court to look at her performance "through the eyes of her supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). So while Ms. Boyd may have testified that she used proper cleaning supplies as instructed [DE 31-1, pg. 6-7], the record shows that it was Mr. Sautter's opinion that Ms. Boyd's performance caused damage to company property. To raise an issue of material fact, Ms. Boyd needed to identify some evidence that could cast doubt on whether Mr. Sautter honestly believed that Ms. Boyd's performance caused property damage. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997). This is because the Court will not act as a "super-personnel department" and question whether his belief that she damaged company property should have factored into the decision to fire her, so long as it was truly one of the reasons. *Id.* at 411 ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.")

  Ms. Boyd failed to establish a prima facie case because she cannot show that she met Flexaust's expectations when she was demoted and fired. The evidence she relies on to show that she met Flexaust's expectations only described her performance before she returned from leave. Thus, it does not show that she was meeting Flexaust's expectations at the time of her demotion or termination. Ms. Boyd acknowledged that it was reasonable for Flexaust to expect her to maintain the cleanliness of its facilities and that she could be fired if she failed to do so. [DE 24-1, pg. 30-31.] The evidence presented by Flexaust undermines any argument that she was meeting these expectations. Mr. Sautter's declaration shows that Ms. Boyd was not working where she was supposed to, that she was not cleaning properly, and that he believed that her cleaning practices

damaged company property. This evidence not only establishes that Ms. Boyd did not meet Flexaust's performance expectations but also supports Flexaust's assertion that she was fired for legitimate reasons.

### b. Ms. Boyd Failed to Show That a Similarly Situated Employee Received Better Treatment.

Ms. Boyd has also failed to present evidence showing that a similarly situated employee was treated more favorably than her. Whether employees are similarly situated is a "flexible, common-sense, and factual inquiry." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). The relevant factors of this inquiry include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008) (internal citations and quotations omitted). Ms. Boyd contends that a mixed-race male named Arlando, is similarly situated to her because he served as the industrial cleaner before she did. [DE 32, pg. 6.] Other than highlighting that they both served as industrial cleaners, Ms. Boyd did not present evidence showing why he is similarly situated. The record is void of any evidence that their job descriptions were the same, that they were held to the same standards, that they had the same supervisor, or that they had comparable qualifications. Thus, she has also failed to establish the fourth prong of the prima facie case.

## Conclusion

For the reasons stated above, summary judgment is appropriate because "there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Accordingly, Defendant Flexaust Inc.'s Motion for Summary Judgment [DE 23] is GRANTED.

SO ORDERED.
September 26, 2024

                                           /s/ *Cristal C. Brisco*
                                           CRISTAL C. BRISCO, JUDGE
                                           UNITED STATES DISTRICT COURT